UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| MELVIN BURTON; CATHERINE BURTON,<br><br>Plaintiffs,<br><br>v.<br><br>J.P. MORGAN CHASE BANK, N.A.; and DOES 1 through 10, inclusive,<br><br>Defendant. | No. 2:21-cv-00708 WBS CKD<br><br>ORDER RE: DEFENDANT'S MOTION TO DISMISS |

----oo0oo----

Plaintiffs Melvin Burton and Catherine Burton brought this action against the owner and servicer of their secured home loan, defendant J.P. Morgan Chase Bank, N.A. ("Chase"), for violations of California's Homeowner Bill of Rights ("HBOR"), Cal. Civ. Code §§ 2923.7, 2923.9, 2924.10, California negligence law, and California's Unfair Competition Law ("UCL").[1] (See

---

[1] Plaintiff's complaint also contains an allegation that Chase violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641(g), by failing to advise plaintiffs in writing within 30 days that their Deed of Trust had been transferred or assigned to

1

generally Def.'s Notice of Removal, Ex. A ("Compl.") (Docket No. 1-1).)

Chase now moves to dismiss plaintiffs' claims in their entirety. (Mot. to Dismiss (Docket No. 6).)

I. Factual Background

Plaintiffs obtained the mortgage loan at issue in July 2007 in the amount of $464,000.[2] (Compl. ¶ 9.) The loan was memorialized in a Promissory Note and secured by a Deed of Trust against the property at issue ("Property"). (Compl., Ex. A ("Deed of Trust").) The nominee beneficiary under the Deed of Trust was Mortgage Electronic Registration Systems, Inc. ("MERS"). (Deed of Trust at 2.)

On December 2, 2010, MERS assigned its interest in the loan to Chase via a recorded Assignment. (Compl., Ex. B.) At the same time, Chase issued a Notice of Default based on plaintiffs' loan default in February 2010. (Def.'s Req. for Judicial Notice ("RJN"), Ex. A (Docket No. 6).)[3] On October 21,

---

a third party. (Compl. ¶ 18.) Plaintiffs have since voluntarily dismissed their allegations concerning the TILA, however. (Docket No. 9.)

[2] Plaintiffs originally obtained the mortgage loan from Paul Financial, LLC. (Compl. ¶ 9.)

[3] The court hereby takes judicial notice of the December 9, 2010 Notice of Default, Notice of Trustee's Sale, and Notice of Rescission presented by Chase in its Request for Judicial Notice (Def.'s RJN, Exs. A-C), as they are matters of public record as documents filed with the Sacramento County Recorder, and not subject to reasonable dispute. See Harris, 682 F.3d at 1132; Perez v. Am. Home Mortg. Servicing, Inc., No. 12-cv-009323-WHA, 2012 WL 1413300, at *2 (N.D. Cal. Apr. 23, 2012) (taking judicial notice of deed of trust, notice of default, assignment of deed of trust, and substitution of trustee, all recorded with Alameda County Recorder's Office).

2011, Chase issued a Notice of Trustee's Sale, scheduling a foreclosure sale of the Property.  (Def.'S RJN, Ex. B.)

Plaintiffs' complaint alleges that the Notice of Default "was never rescinded and is still active."  (Compl. ¶ 11.)  However, records filed with the Sacramento County Recorder clearly indicate that Chase rescinded the Notice of Default when it entered into a loan modification agreement with plaintiffs in April 2012.[4]  (Def.'s RJN, Ex. C.)

In 2014, plaintiffs filed for Chapter 13 bankruptcy in the Northern District of California.  (Def.'s RJN, Ex. D.)  Plaintiffs did not list any potential claim against Chase in the bankruptcy Schedules.  (See id.)  Plaintiffs were discharged from bankruptcy in February 2020.  (Def.'s RJN, Ex. E.)

On October 5, 2020, plaintiffs, through their agent Non-Profit Alliance of Consumer Advocates ("Alliance"), submitted a new Loan Modification Application ("Application") to Chase and requested that Chase appoint a single point of contact ("SPOC").  (Compl. ¶ 12, Ex. C ("Application").)  Plaintiffs' allegations are somewhat confusing, but from what the court can discern, Alliance appears to have called Chase at least four times to discuss plaintiffs' Application over the next four months. (See Compl. ¶¶ 13-18.)  On October 15, 2020, Alliance called Chase, but Chase informed Alliance that it had not received

---

[4]  In addition to being subject to defendant' Request for Judicial Notice, the 2012 loan modification agreement is properly considered by the court because it is part of the loan contract alleged the complaint, and is thus incorporated by reference into the complaint.  See United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003).

3

documentation or proof indicating that Alliance was authorized to act on plaintiffs' behalf regarding their Application.[5]  (Compl. ¶ 13.)

Next, on October 26, 2020, plaintiffs appear to allege that, after plaintiffs and Alliance contacted Chase via a 3-way call, Chase informed them that an SPOC had been assigned to their case and that they would have to wait to discuss their Application until the SPOC was available.  (Compl. ¶ 14.)  On November 3, 2020, an agent for Chase, James, informed Alliance that Chase had not received plaintiffs' Application and told Alliance to refax the Application to another fax number.  (Compl. ¶ 15.)  Then, on December 2nd, Alliance spoke with another agent of Chase, Amanda Faeder, who advised that plaintiffs had been given "an extension" to December 31, 2020.  (Id.)

Plaintiffs do not allege that Chase has assessed any late fees or taken any actions to initiate foreclosure proceedings since they submitted their Application.  (See generally Compl.)  To the contrary, plaintiffs allege that, on October 12, 2020, Chase informed them that they had been placed on COVID forbearance.  (Compl. ¶ 15.)  Plaintiffs' allegations do not specify whether the extension mentioned by Ms. Faeder on December 2nd was in reference to COVID forbearance, whether their

---

[5] Plaintiffs' allegations regarding this call are, to put it mildly, unclear. The complaint states: "PLAINTIFFS allege that on October 15, 2020, NON-PROFIT [Alliance] called DEFENDANT [Chase] but they apparently did not have our authorization so where is the packet?"  (Compl. ¶ 13.)  The court assumes that this allegation indicates that Chase told Alliance that it had not received any proof or documentation that Alliance was authorized to act on plaintiffs' behalf.

4

1 status on COVID forbearance has expired, or whether they are
2 still on COVID forbearance.  Their allegations also do not
3 indicate that Chase has taken any action to grant or deny their
4 Application or to initiate foreclosure proceedings.  (See id.)

II. Discussion

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal when the plaintiff's complaint fails to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  The inquiry before the court is whether, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the complaint has stated "a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations."  Id. at 679.

A. California HBOR

Plaintiffs claim that Chase has violated three provisions of the California HBOR.  First, plaintiffs claim that Chase violated the SPOC requirement, which requires that, "[u]pon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact."

1  Cal. Civ. Code § 2923.7.  Second, plaintiffs claim that Chase
2  failed to offer them foreclosure prevention alternatives within
3  five business days of recording a notice of default.  Id. at
4  § 2924.9.  Third, plaintiffs claim that Chase failed to provide
5  written acknowledgment of its receipt of documentation within
6  five business days of receipt.  Id. at § 2924.10.

       1.   Sections 2923.7 & 2924.10

Plaintiffs' claims for violations of §§ 2923.7 and 2924.10 fail because, even assuming Chase's conduct violated the HBOR, plaintiffs fail to allege material violations of the statute.  Violations of §§ 2923.7 and 2924.10 are only actionable when those violations are material--i.e., where "the alleged violation affected a plaintiff's loan obligations or the modification process."  Shupe v. Nationstar Mortgage LLC, 231 F. Supp. 3d 597, 603 (E.D. Cal. 2017) (England, J.) (quoting Cornejo v. Ocwen Loan Servicing, LLC, 151 F. Supp. 3d 1102, 1113 (E.D. Cal. 2015)); see also Jacobik v. Wells Fargo Bank, N.A., No. 17-cv-05121-LB, 2017 WL 5665666, *8 (N.D. Cal. Nov. 26, 2017).

Plaintiffs allege that they submitted their completed Application on October 5, 2020, and do not allege having received confirmation of receipt from Chase.  (Compl. ¶ 12.)  Plaintiffs then appear to allege that they were unable to speak with a Chase representative on October 26, 2020, because an SPOC had been appointed to their case but was unavailable at that time.[6]

---

[6]  It bears repeating that the allegations in plaintiffs' complaint are extremely unclear.  While plaintiffs assert generally that Chase failed to appoint an SPOC, and their complaint contains passing mention of multiple agents for Chase being involved in discussions with plaintiffs and Alliance (i.e. "James" and "Amanda Faeder," see Compl. ¶¶ 15-16), they also

1   (Compl. ¶ 14.)  Finally, plaintiffs allege that they were told to
2   re-fax their Application to a different fax number on November 3,
3   2020.  (Compl. ¶ 15.)
4        Even assuming Chase's failure to assign an SPOC (or
5   failure to provide plaintiffs with a way to contact their SPOC)
6   and failure to provide written confirmation of its receipt of
7   plaintiffs' Application delayed consideration of plaintiffs'
8   application until November 3, 2020, plaintiffs do not provide any
9   explanation of how a 29-day delay ultimately has impacted their
10  loan obligation or impaired the modification process.  Plaintiffs
11  acknowledge that Chase granted them COVID forbearance during this
12  time period, on October 12, 2021, so plaintiffs were not
13  obligated to make any payments on their loan during this time.
14  (Compl. ¶ 15.)  Plaintiffs do not allege that Chase has denied
15  their Application, or even indicated to them that any portion of
16  their Application is missing and preventing Chase from evaluating
17  it.  (See Compl. ¶¶ 12-18.)
18       There is also no indication that any foreclosure
19  proceedings are pending, other than a stray allegation regarding
20  the 2010 Notice of Default that is contradicted by public
21  records.  (See Def.'s Req. for Judicial Notice, Ex. C.)  In sum,
22  plaintiffs simply do not allege that any material harm has
23  resulted from Chase's alleged failures to appoint a SPOC or to
24  acknowledge receipt of plaintiffs' Application within five days.

---

25  appear to allege that Chase informed them that an SPOC had been
    assigned to their file.  (Compl. ¶ 14.)  Though it is possible
26  that plaintiffs' own allegations show that Chase did in fact
    comply with the SPOC requirement, the court need not reach that
27  question, as plaintiffs fail to allege a material harm that has
28  resulted from any purported failure to assign an SPOC.

See Shupe, 231 F. Supp. 3d at 603. The court will therefore dismiss plaintiffs' claims for violations of §§ 2923.7 and 2924.10.

### 2. Section 2924.9

Plaintiffs' claim that Chase failed to provide them with foreclosure alternatives fails for two different reasons. First, § 2924.9 did not exist in 2010, when the Notice of Default was recorded (and thus when Chase would have been required to provide plaintiffs with notice of foreclosure alternatives). The effective date of the HBOR, including § 2924.9, was January 1, 2013. Valbuena v. Ocwen Loan Servicing, 237 Cal. App. 4th 1267, 1272 (2d Dist. 2015). Because the statute is "not retroactive," it does not encompass conduct which occurred prior to its effective date, including the recordation of the Notice of Default in this case. See Naranjo v. Aurora Lan Servs., LLC, No. 14-cv-0065 JAH (JMA), 2014 WL 4805174, *3 (S.D. Cal. Sep. 26, 2014); Rockridge Trust v. Wells Fargo, N.A., 985 F. Supp. 2d 1110, 1152 (N.D. Cal. 2013).

Second, even if § 2924.9 were effective at the time of the alleged misconduct, HOBR claims are subject to the three-year limitations period set forth in California Code of Civil Procedure § 338(a). See Dang v. Residential Credit Solutions, No. C-14-02587-RMW, 2014 WL 5513753, *6 (N.D. Cal. Oct. 31, 2014). Because plaintiffs allege that Chase recorded the Notice of Default in December 2010, any section 2924.9 claim expired in December 2013, more than seven years prior to initiation of this suit. See id.

The court will therefore dismiss plaintiffs' second

claim for violation of Civil Code § 2924.9.

B. <u>Negligence</u>

Plaintiffs next claim that Chase acted negligently in handling their Application. The conduct which forms the basis of this claim is duplicative of that underlying plaintiffs' HBOR claims, as plaintiffs allege that each action taken by Chase which violated the HBOR also constituted a breach of the duty of care which they claim Chase owed them as a lender. (<u>See</u> Compl. ¶¶ 36-55.)

To state a claim for negligence, plaintiffs must allege (1) that Chase owed them a duty of care, (2) which it breached, and that the breach (3) proximately caused them (4) injury. <u>Lueras v. BAC Home Loans Servicing, L.P.</u>, 221 Cal. App. 4th 49, 62 (4th Dist. 2013). Chase disputes that it owed any duty to plaintiffs, arguing that it did not exceed the scope of its conventional role as a money lender.

Under California law, it is unclear whether lenders owe borrowers a duty of care when considering loan modification applications. As Chase points out, the general rule is that financial institutions "owe no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." <u>Nymark v. Heart Fed. Savs. & Loan Ass'n</u>, 231 Cal. App. 3d 1089, 1095-96 (3d Dist. 1991). However, that rule is not absolute--California courts apply six factors, known as the "<u>Biakanja</u> factors," to determine whether a duty is owed:

> "[1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the

9

```
                    degree of certainty that the plaintiff
                    suffered injury, [4] the closeness of the
                    connection between the defendant's conduct
                    and the injury suffered, [5] the moral blame
                    attached to the defendant's conduct, and [6]
                    the policy of preventing future harm."
```

Id. (citing Biakanja v. Irving, 49 Cal. 2d 647 (Cal. 1958)).

In Lueras, the California Court of Appeal, Fourth District, applied these factors to find that the lender—defendant "did not have a common law duty of care to offer, consider, or approve a loan modification" and dismissed the complaint. Lueras, 221 Cal. App. 4th at 68.  However, in Alvarez v. BAC Home Loans Servicing, 228 Cal. App. 4th 941, 948 (1st Dist. 2014), the California Court of Appeals sitting in the First District Court of Appel applied the Biakanja factors to find a duty where "defendants allegedly agreed to consider modification of the plaintiffs' loans."

The parties acknowledge this split in authority; each argues that the opinion reaching their desired outcome was better reasoned.  (See Mot. to Dismiss at 10; Pl.'s Opp'n at 11.)  Most federal courts sitting in California have elected to follow Lueras.  See Shupe, 231 F. Supp. at 605 (citing cases).  The Ninth Circuit also appears to find the Lueras line of cases more persuasive.  See Anderson v. Deutsche Bank Nat'l Trust Co. Ams., 649 Fed. Appx. 550, 552 (9th Cir. 2016) (mem.) (citing Lueras, 221 Cal.App.4th at 68) ("Although the California Supreme Court has not addressed the question of whether a loan servicer owes a common law duty to approve a loan modification application within a particular time frame, we conclude that application of the Biakanja factors does not support imposition of such a duty

10

where, as here, the borrowers' negligence claims are based on allegations of delays in the processing of their loan modification applications." (footnote omitted)); Badame v. J.P. Morgan Chase Bank, N.A., 641 Fed. Appx. 707, 709 (9th Cir. 2016) (mem.) ("Plaintiffs failed to show that they met the first element of a negligence claim, because Chase did not have 'a common law duty of care to offer, consider, or approve a loan modification.' " (quoting Lueras, 221 Cal. App. 4th at 68)); Deschaine v. IndyMac Mortg. Servs., 617 Fed. Appx. 690, 693 (9th Cir. 2015) (mem.) ("IndyMac did not have 'a common law duty of care to offer, consider, or approve a loan modification, or to explore and to offer [Deschaine] foreclosure alternatives.' " (alteration in original) (quoting Lueras, 221 Cal.App.4th at 68)).

This court will similarly follow the Lueras line of cases. Loan modifications are essentially arm's length negotiations that do not impose common-law duties upon lenders because they "fall[] squarely within the scope of a lending institution's conventional role as a money lender." Lueras, 221 Cal. App. 4th at 67. "A lender's obligations to offer, consider, or approve loan modifications and to explore foreclosure alternatives are created solely by the loan documents, statutes, regulations, and relevant directives and announcements from the United States Department of the Treasury, Fannie Mae, and other governmental or quasi-governmental agencies." Id. Accordingly, Chase did not owe plaintiffs a duty of care, and the court will dismiss plaintiffs' fourth claim for negligence.

    C.    California UCL

11

Plaintiffs' final claim is that Chase's conduct violated the California UCL. See Cal. Bus. & Prof. Code § 17200. The UCL prohibits unfair competition, which it defines as "any unlawful, unfair, or fraudulent" business act or practice." Id. To have standing to bring a UCL claim, a plaintiff must have "suffered injury in fact and . . . lost injury or property as a result of the unfair competition." Id. at § 17204. "The phrase 'as a result of' . . . means 'caused by' and requires a causal connection" between the alleged act of unfair competition and the loss of money or property. Hall v. Time, 158 Cal. App. 4th 847, 855 (4th Dist. 2008).

Plaintiffs first allege that each underlying violation of the HBOR also constitutes an "unlawful business act or practice" which gives rise to liability under the UCL. (See Compl. ¶¶ 56-68.) However, for reasons similar to those discussed above, plaintiffs lack standing to bring a UCL claim for violations of the HBOR because they do not allege that they have suffered any injury in fact as a result of the alleged HBOR violations. See Hall, 158 Cal. App. 4th at 855.

Plaintiffs further allege that Chase violated the UCL by unduly delaying review of their Application, causing them to incur "late & interest fees,"[7] as well as litigation expenses

---

[7] In their Opposition, plaintiffs argue that Chase has continued to impose "default, interest and late fees to plaintiffs' account even though this is explicitly against [Civil Code] § 2924.11(f)." Section 2924.11(f) prohibits mortgage services from collecting late fees "for periods during which a complete first lien loan modification application is under consideration . . . ." Because plaintiffs' complaint does not contain a single mention of § 2924.11(f), the court need not evaluate whether plaintiffs have adequately stated a claim for

12

associated with bringing this suit.  (Id. at ¶¶ 53, 66.)  These allegations similarly fail to confer plaintiffs with UCL standing.  First, it is well-settled that plaintiffs cannot use their litigation expenses to manufacture a loss of money or property for the purposes of UCL standing.  See, e.g., Paulhus v. Fay Servicing, LLC, No. 2:14-836 WBS AC, 2014 WL 3845051, *3 n.3 (E.D. Cal. Aug. 6, 2014) ("The cost of filing a claim under the UCL also cannot constitute economic injury under the UCL.").

Second, plaintiffs fail to establish a causal connection between Chase's alleged delay in considering their Application and any late fees or interest that they have incurred on their loan.  The requirement that plaintiffs pay interest and late fees after missing payments arises out of the terms of the Promissory Note associated with their Deed of Trust.  (Compl., Ex. A § 1.)  Plaintiffs do not allege that Chase charged them more in interest or in late fees than what they were otherwise required to pay under the terms of the Note, or that Chase has caused them to miss payments and incur late fees.  (See generally Compl.)  Additionally, plaintiffs' own complaint alleges that Chase granted them COVID forbearance (and thus absolved them of the requirement that they make payments pursuant to the terms of the loan) within a week of plaintiffs' submission of their loan modification application.  (Compl. ¶¶ 12, 15.)  Plaintiffs therefore have not established the requisite causal connection

---

violation of § 2924.11(f).  See Schneider v. Cal. Dep't of Corrs., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

between any delay on the part of Chase and the incurrence of late fees and interest sufficient to establish UCL standing.  See Hall, 158 Cal. App. 4th at 855; Shupe, 231 F. Supp. 3d at 606.  The court will therefore dismiss plaintiffs' fifth claim for violation of the UCL.

Because plaintiffs' complaint fails to put forth sufficient facts to show that any of their alleged claims for relief are plausible, the court will grant defendant's motion to dismiss.  See Iqbal, 556 U.S. at 678.  At oral argument, plaintiffs' counsel represented that, if given leave to amend their complaint, plaintiffs would be able to sufficiently allege that the Chase's violations of the HBOR prevented them from submitting a complete Application.  While it is not at all clear from what was presented in plaintiffs' complaint that they could present sufficient facts to state a claim, the court will grant plaintiffs leave to amend their complaint to attempt to do so.

IT IS THEREFORE ORDERED that defendant's motion to dismiss (Docket No. 6) be, and the same hereby is, GRANTED.  Plaintiffs have twenty days from the date this Order is signed to file an amended complaint, if they can do so consistent with this Order.

Dated:  June 15, 2021

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

14